IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID H. KHAL,                          Case No. 3:14-cv-01361-AA
                                             OPINION AND ORDER
                    Plaintiff,

        v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

                    Defendant.
_____

Tim D. Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137
        Attorney for plaintiff

Billy Williams
Janice E. Hebert
United States Attorneys Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Jeffrey E. Staples
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900
Seattle, Washington 98104
        Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff David Khal brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

This case has a long and complicated procedural history.[1] On March 9, 2004, plaintiff applied for DIB. Tr. 58-60. After his application was denied initially and upon reconsideration, a hearing was held before an Administrative Law Judge ("ALJ"); on October 11, 2006, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 1073-80. On May 15, 2009, the Appeals Council remanded the matter for reconsideration of whether plaintiff engaged in substantial gainful activity after the alleged onset date. Tr. 1115-18. Another administrative hearing was held on March 11, 2010, at which plaintiff was represented by counsel and testified, as did a vocational expert ("VE") and plaintiff's wife, Alyce Khal. Tr. 1198-1227. On March 24, 2010, the ALJ determined that plaintiff was not disabled. Tr. 13-27. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 6-8.

---

[1] The record before the Court constitutes over 1400 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

On March 6, 2013, this Court found that the ALJ did not err in assessing the statements of plaintiff or Mrs. Khal. Tr. 1249-70. Nevertheless, in light of the ALJ's failure to provide a legally sufficient reason to reject the medical opinion of Paul Puziss, M.D., the Court remanded the matter for further proceedings. Id.

On March 11, 2014, a third administrative hearing took place, wherein plaintiff was again represented by counsel and testified, as did Mrs. Khal. Tr. 1370-1414. On May 1, 2014, the ALJ issued a third decision finding plaintiff not disabled under the Act. Tr. 1231-46. Plaintiff subsequently commenced this lawsuit.

## STATEMENT OF THE FACTS

Born on February 18, 1949, plaintiff was 55 years old on the alleged onset of disability and 65 years old at the time of the third hearing. Tr. 58, 1231, 1392. Plaintiff graduated from highschool and chiropractic school, and was 15 credits shy of obtaining an undergraduate degree in biology. Tr. 122-27, 1205. He worked as a chiropractor for more than 25 years, during which time he owned and managed his own practice. Tr. 260. Plaintiff sustained an on-the-job injury in May 2013 that rendered him unable to continue his previous work. Tr. 441-42. He alleges disability as of February 1, 2004, due to degenerative disc disease of the spine, diabetes, and hypertension, as well as issues with both shoulders and knees. Tr. 259; Pl.'s Opening Br. 2.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by

substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments."

Page 4 - OPINION AND ORDER

Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five-step process outlined above, the ALJ found that plaintiff had "not engaged in substantial gainful activity during the period from his alleged onset date of February 1, 2004 through his date last insured of December 31, 2008." Tr. 1234. At step two, the ALJ determined plaintiff's "degenerative disc disease of the lumbar and cervical spine, rotator cuff tear of

Page 5 - OPINION AND ORDER

the left shoulder, small tear with free margin of the right medial meniscus, a small tear of the free margin of the left lateral meniscus, bilateral shoulder impingement, and chronic left acromioclavicular strain aggravating arthritis" were medically-determinable and severe. Tr. 1234-35. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 1235.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff possessed the residual functional capacity ("RFC") to "perform sedentary work" except that he must "avoid concentrated exposure to vibration and the use of ladders, ropes, and scaffolds," and "could occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and perform overhead reaching." Tr. 1236.

At step four, the ALJ determined plaintiff could not perform his past relevant work. Tr. 1243. At step five, the ALJ found that plaintiff acquired transferrable skills from his past relevant work which enabled him to perform the sedentary, semi-skilled position of information clerk. Tr. 1244. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act prior to the date last insured. Tr. 1245.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding him not fully credible; (2) improperly assessing the third-party testimony

Page 6 - OPINION AND ORDER

of Mrs. Khal; (3) rejecting medical opinion evidence furnished by Dr. Puziss; and (4) rendering an invalid step five finding.

I.    Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for rejecting his subjective symptom testimony concerning the severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Initially, this Court previously considered and affirmed the ALJ's adverse credibility finding. Tr. 1254-60. On remand, the ALJ

relied on many of the same legally valid reasons to find plaintiff not fully credible. Tr. 1236-43. Plaintiff now attacks those reasons on the same bases he did in his prior appeal, such that he presented no justification for this Court to diverge from its prior ruling. See Thomas v. Bible, 983 F.2d 152, 154 (9th Cir.), cert. denied, 508 U.S. 951 (1993) ("a court is generally precluded from reconsidering an issue that has already been decided by the same court") (citation omitted); see also Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) ("[t]he Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility") (citation omitted).

Regardless, the ALJ's May 2014 credibility finding is not erroneous. After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his statements regarding the extent of those symptoms were not fully credible due to his inconsistent physical activities, failure to report pain symptoms or follow the prescribed treatment plan, and lack of interest in seeking other suitable employment, as well as because he was "seeking benefits from the very program, Social Security, that he apparently evaded funding [via taxes] during his [lucrative] working years by paying himself through shareholder distributions rather than compensation." Tr. 1236-45.

Notably, the ALJ found that plaintiff's hearing statements - specifically, that he has "no physical [or] mental activity [or] recreation" and could only sit for up to 30 minutes at one time - were undermined by his ability to travel and the independent observations of his providers. Tr. 1195, 1241-42, 1381. Activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012). The record demonstrates that plaintiff traveled extensively after the alleged onset date, both domestically and internationally, for business and recreation. See, e.g., Tr. 309, 899, 939, 1038, 1043-44, 1047, 1355, 1398-05, 1410-13; see also Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly inferred that the claimant was not as physically limited as alleged due to his ability to travel to Venezuela). Further, plaintiff's vocational counselor observed that he "sat for a very lengthy intake interview . . . quite comfortably," despite reporting "that if he sits for more than one-half hour he has pain." Tr. 125; see also Tr. 1343-52 (plaintiff repeatedly communicating to his doctor in the months leading up to the third administrative hearing that he was "feeling well"); 1359 (plaintiff recounting in March 2012 that "he is feeling relatively well" but recently "played golf for 8 hours with a friend," which caused some leg swelling). Although plaintiff offers a more favorable interpretation of this evidence, the ALJ's reading was nonetheless rational such that it must be upheld. Batson v. Comm'r of Soc. Sec.

Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

The ALJ also discounted plaintiff's testimony because he sought little medical treatment for his allegedly debilitating impairments during the relevant time period and consistently failed to report any pain symptoms or limitations to his treating providers. Tr. 1239-42. An ALJ may consider a claimant's failure to report symptoms in making an adverse credibility finding. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). Plaintiff's 2014 testimony reflected that, after 2006, Dr. Puziss provided the primary treatment for his pain-inducing physical impairments; Fayyaz Mahmood, M.D., managed the majority of his other conditions. Tr. 1378-81. Yet there are no chart notes from Dr. Puziss between November 2006 and July 2009, when plaintiff presented after the date last insured with pain in his right wrist; despite seeing Dr. Puziss somewhat regularly thereafter, plaintiff did not complain of any back or shoulder pain until May 2013. Tr. 987-90, 1311-20. Moreover, plaintiff reported virtually no pain, discomfort, or functional limitations to Dr. Mahmood, his treating provider since 2001. See, e.g., Tr. 334-47, 479-518, 1038-45.

Additionally, the ALJ found plaintiff's non-compliance with Dr. Mahmood's prescribed treatments belied his credibility. Tr. 1242. An ALJ may discredit a claimant due to an "unexplained or inadequately explained failure to follow a prescribed course of treatment." Tommasetti, 553 F.3d at 1039; SSR 96-7p, available at

1996 WL 374186.[2] Plaintiff frequently adjusted his medications or failed to comply with his doctors' recommendations, despite the fact that Dr. Mahmood repeatedly counseled against such practices. Tr. 334, 480-81, 483, 899, 1038, 1041, 1045.

Thus, the ALJ provided several specific, clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's credibility finding is affirmed.[3]

---

[2] The administrative record does not contain any explanation for plaintiff's failure to follow the recommendations of his medical providers, including any limitation in financial resources. In fact, plaintiff has various real estate holdings from which he derives significant income and also receives $5000 per month in long-term disability benefits; while not dispositive, any benefits granted under the Act would not be pocketed by plaintiff but instead would go to his insurer and attorney. Tr. 1182-85, 1375. Furthermore, plaintiff's counsel's speculation - i.e. "it may be (and probably is) that [he] believed he was qualified to make adjustments to his own dosage" because he "ran a successful medical practice for many years" - is unavailing. Pl.'s Opening Br. 14. Plaintiff was not a medical doctor and therefore did not have the ability to prescribe or adjust medications.

[3] Alternatively, plaintiff contends that the ALJ should have developed the record in regard to his credibility because "perhaps there is a reasonable explanation" for his missed appointments with his vocational counselor and lack of medical compliance. Pl.'s Opening Br. 14. The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted). Neither the ALJ nor any medical source found the record to be ambiguous or insufficient for proper evaluation; plus, this case has been ongoing for more than ten

II.  Lay-Witness Testimony

Plaintiff next asserts that the ALJ neglected to provide a germane reason to reject the testimony of Mrs. Khal. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

Mrs. Khal completed a third-party adult function report in March 2004, as well as testified at the second and third administrative hearings. Tr. 275-83, 1214-18, 1396-1411. Her statements generally reflect that plaintiff did not engage in any daily activities beyond going to doctors' appointments, watching television, paying bills, performing home exercises, visiting with friends and family, traveling, and occasional grocery shopping. Id. She remarked further that he needed to change position frequently and lay down for several hours per day. Id.

The ALJ afforded "little weight" to Mrs. Khal's opinion "for the reasons little weight is given to [plaintiff's] testimony regarding the extent and severity of his limitations: [plaintiff's] inconsistent physical activities, his inconsistent reporting of limitations, and his failure to follow the prescribed treatment plan." Tr. 1242-43. An ALJ may reject lay testimony on same basis as the claimant's discredited subjective reports. Valentine v.

---

years and the date last insured lapsed in 2008. The ALJ's duty to more fully develop the record was not triggered.

Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009); see also Molina, 674 F.3d at 1114 ("if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness") (citations omitted). Likewise, inconsistency with the evidence of record is a germane reason to reject a third-party's statements. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

An independent review of the record reveals that Mrs. Khal's testimony concerning plaintiff's functional limitations is nearly identical to plaintiff's. As addressed in section I, the ALJ provided specific, clear and convincing reasons, supported by substantial evidence, to find plaintiff less than fully credible, and these reasons are equally applicable to Mrs. Khal's testimony. The ALJ's evaluation of the lay witness testimony is upheld.

III. Medical Opinion Evidence

Plaintiff argues that the ALJ erred by failing to provide a legally sufficient reason, supported by substantial evidence, for discrediting the medical opinion of Dr. Puziss. There are three types of medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. Bayliss, 427 F.3d at 1216 (citation omitted). If a treating or examining doctor's opinion is

contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

In December 2004, Dr. Puziss examined plaintiff for the first time post-injury and diagnosed him with "[d]egenerative spondylosis, mainly L4-5 with mild foraminal stenosis bilaterally L4-5 and a small disc protrusion, probably not symptomatic L5-S1, small annular tear L4-5"; "[s]mall tear free margin right medical meniscus"; "[s]mall tear free margin left lateral meniscus"; and "[b]ilateral small full thickness supraspinatus rotator cuff tears." Tr. 473. Dr. Puziss noted that plaintiff "remains disabled from his work as a chiropractor, probably permanently." Tr. 473. Dr. Puziss similarly opined, in January 2005 and March 2005, that plaintiff was unable to perform chiropractic work. Tr. 459, 462. In July 2005, Dr. Puziss stated that plaintiff "remains in disability privately and is likely permanently and totally disabled from returning to work as a chiropractor [and] probably incapable of any kind of work given his age, education, and skill." Tr. 455-56. In April 2006, Dr. Puziss prepared a "Physical Capacities Evaluation," on which he wrote plaintiff "is permanently and totally disabled realistically." Tr. 516.

In March 2010, Dr. Puziss completed a medical questionnaire prepared by plaintiff's attorney. Tr. 1063-66. Dr. Puziss opined that plaintiff could occasionally/frequently lift less than 10 pounds, stand or walk for less than two hours in an eight hour workday, and sit for three hours in eight hour workday. Tr. 1063. He also checked boxes reflecting that plaintiff must be able shift

positions at will and lie down at unpredictable intervals. Tr.
1064. Dr. Puziss rated plaintiff as never being able to twist,
stoop, or crouch, but occasionally be able to climb stairs and
ladders. Tr. 1065. Lastly, Dr. Puziss circled the option indicating
that plaintiff's impairments would cause him to be absent from work
more than three times per month. Tr. 1066.

The ALJ thoroughly analyzed the medical evidence from Dr.
Puziss and gave "great weight to [his opinions] that during the
relevant time period [plaintiff] was precluded from returning to
his past work as a chiropractor." Tr. 1238-40. The ALJ observed,
however, that the doctor's July 2005 statement of total disability
was "equivocal." Tr. 1240-41. The ALJ rejected Dr. Puziss' April
2006 opinion because it was "unclear [whether] he intended that
[plaintiff] was permanently and totally disabled from his past
work, or from any work," and not as well explained as the VE's
finding of transferable work skills. Tr. 1040. The ALJ afforded
only "some . . . weight to Dr. Puziss' opinion from 2010" because
it was: (1) offered well after the date last insured and did not
relate back; (2) "in part based on a diagnosis, right ring finger
trigger finger, that did not appear in the medical record
whatsoever during the relevant time period"; (3) "inconsistent with
the other information in the record," including plaintiff's
extensive travel and the independent observations of his other
providers; and (4) did not link specific limitations to any
objective findings. Tr. 1241.

An ALJ is not required to incorporate limitations phrased equivocally into the RFC. Valentine, 574 F.3d at 691-92. An ALJ may also reject "check-off reports that [do] not contain any explanation of the bases of their conclusions" or medical opinions that are inconsistent with the claimant's daily activities. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). "[I]t is well-established that an ALJ may reject a medical opinion, even that of a treating doctor, where it was completed years after claimant's date last insured and was not offered as retrospective analysis." Morgan v. Colvin, 2013 WL 6074119, *10 (D.Or. Nov. 13, 2013) (citations and internal quotations and ellipses omitted).

Substantial evidence supports the ALJ's assessment of the medical evidence in the case at bar. By prefacing it with the term "probably," Dr. Puziss' July 2005 remark was phrased equivocally. As the ALJ reasonably determined, the inclusion of such speculative language demonstrates a "lack of confidence" in this vocational conclusion. Tr. 455-56, 516, 1241; see also Pl.'s Opening Br. 12 ("Dr. Puziss's statements about Plaintiff's age, education, and work skills might have gone beyond his area of expertise"); Morgan, 169 F.3d at 600 ("the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability") (citation omitted). Concerning his April 2006 opinion, there is no reference to any objective medical findings, which, as the ALJ's summary of the medical evidence indicated, were mild to moderate and did not require surgery per Dr. Puziss' reports. Tr. 1238-39. Given Dr. Puziss' four previous

Page 16 - OPINION AND ORDER

opinions, all of which predominately related to plaintiff's prior chiropractic work, the meaning of the doctor's April 2006 comment was ambiguous.

Finally, as discussed in section I, plaintiff's demonstrated physical activities are inconsistent with several of Dr. Puziss' functional restrictions. In any event, plaintiff did not resume treatment with Dr. Puziss until the adjudication period expired; he did not report significant disruption from any condition that predated the date last insured until more than three years after Dr. Puziss issued his March 2010 evaluation. Moreover, Dr. Puziss' March 2010 opinion did not relate plaintiff's current symptoms or limitations back to the relevant time frame. The ALJ's evaluation of Dr. Puziss' opinions is affirmed.

IV.  Step Five Finding

Plaintiff asserts that the ALJ's step five finding is erroneous because it did not account for all of the limitations set forth in his testimony, Mrs. Khal's third-party statements, and the opinions of Dr. Puziss. Plaintiff also contends the step five finding is deficient because the ALJ relied on "one sedentary occupation, information clerk," in contravention of Lounsburry v. Barnhart, 483 F.3d 111 (9th Cir. 2006), and plaintiff "does not have any [transferable] skills related to directing people to various parts of the hospital." Pl.'s Opening Br. 16-18.

A.  Failure to Account for Limitations

The RFC is the maximum a claimant can do despite his limitations. 20 C.F.R. § 404.1545. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of

Page 17 - OPINION AND ORDER

the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, underline_available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F3d 1157, 1163-65 (9th Cir. 2001).

As addressed herein, the ALJ properly discredited plaintiff, Mrs. Khal, and Dr. Puziss, and there is no indication, outside of this evidence, that plaintiff suffered from functional limitations beyond those outlined in the RFC during the relevant time period. As such, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss, 427 F3d at 1217-18; Stubbs-Danielson v. Astrue, 539 F3d 1169, 1175-76 (9th Cir. 2008). The ALJ's step five finding is upheld in this regard.

B.    Transferable Work Skill to a Single Occupation

Claimants who are age 55 or older and limited to sedentary work are considered disabled unless their past relevant work was skilled or semiskilled and those skills are transferable to other skilled or semiskilled work with very little, if any, vocational adjustment. Tommasetti, 533 F.3d at 1042-43 (citations omitted); 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.00, 201.06, 201.07; 20 C.F.R. § 404.1568(d). Claimants who fall into this category

> cannot be expected to make a vocational adjustment to substantial changes in work simply because skilled or semiskilled jobs can be identified which have some degree of skill similarity with their PRW. In order to establish transferability of skills for such individuals, the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation. [W]here job

> skills have universal applicability across industry
> lines, e.g., clerical, professional, administrative, or
> managerial types of jobs, transferability of skills to
> industries differing from past work experience can
> usually be accomplished with very little, if any,
> vocational adjustment.

SSR 82-41, available at 1982 WL 31389.

At the hearing, the VE testified that plaintiff's previous work as a chiropractor was "medium [exertion] with [a] SVP: 8." Tr. 1218. In response to the ALJ's recounting of plaintiff's dispositive functional limitations, the VE explained: "I researched what I thought would be [the] most physically, you know, sedentary job that I though he would have transferability of skills to, and with such a high level of education and experience, what I came up with was information clerk, especially in a hospital setting." Tr. 1219-20. The position of information clerk is a "SVP: 4 job." Tr. 1222-23, 1226. The VE described this type work as follows: "when you go into a hospital, somebody assists you, maybe helps you, lets you know where the - where the particular doctor's office is, may look something up on the computer, may escort you to that office." Tr. 1222.

She reported there was "a very large labor market" for the representative occupation of information clerk, with approximately 1,100 jobs in the regional economy and 77,000 jobs in the national economy. Tr. 1220. A "high percentage of th[ose] numbers [are] in the medical profession," such that "a conservative estimate would be at least 50 percent" - i.e. 550 positions regionally and 38,500 positions nationally. Tr. 1221-22. The VE identified plaintiff's transferable skills as "imparting information," "deal[ing] with patients," "run[ning] his own clinic," "knowledge of the medical

field," and basic customer service and computer skills. Tr. 1222, 1225. She concluded that "most employers who would be looking for an information clerk at - in a healthcare type environment would be thrilled to have someone [like plaintiff] who [has] even more than . . . entry level skills." Tr. 1225.

The ALJ accurately recounted the VE's testimony and found that plaintiff "acquired work skills from his past relevant work" - i.e. a "basic background work in the health care industry," "a great deal of experience imparting information," and "extensive customer service skills," accumulated from "run[ning] his own medical clinic" - that "were transferable to others occupations with jobs that existed in significant numbers in the national economy."[4] Tr. 1245. Accordingly, the ALJ determined that, under "Medical-Vocational Rule 201.07, section 201.00(f) of the Medical-Vocational Guidelines, and 20 CFR 404.1568(d)," a "finding of 'not disabled' is appropriate." Id.

The Court finds the ALJ properly evaluated transferability pursuant to SSR 82-41 in order to resolve that plaintiff's highly skilled past relevant work provided skills that would lend themselves to the semi-skilled position of information clerk. SSR 82-41, available at 1982 WL 31389; 20 C.F.R. § 404.1568; SSR 00-4p, available at 2000 WL 1898704; see also Salazar v. Astrue, 859 F.Supp.2d 1202, 1221-22 (D.Or. 2012) (rejecting a nearly identical

───────────────

    [4] Although plaintiff does not explicitly challenge the incidence of jobs identified by the ALJ, they are nonetheless sufficient. Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014).

Page 20 - OPINION AND ORDER

argument to hold that similar qualities constituted transferable skills) (citations omitted).

Plaintiff's remaining contention regarding <u>Lounsburry</u> has been expressly rejected by the Ninth Circuit. <u>Tommasetti</u>, 533 F.3d at 1043-44. In other words, the Medical-Vocational Guidelines relating to light work, which were the subject of <u>Lounsburry</u> and on which plaintiff relies, are not pertinent here. <u>Earnshaw v. Comm'r of Soc. Sec. Admin.</u>, 357 Fed.App. 36, 37 (9th Cir. 2009); <u>see also LaBlue v. Colvin</u>, 2013 WL 5431490, *3-5 (D.Or. Sept. 26, 2013) (affirming the ALJ's decision under analogous circumstances).

### CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 27 day of August 2015.

_____
Ann Aiken
United States District Judge